UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BANK OF NEW YORK MELLON | § | |
| TRUST COMPANY NA, | § | |
| | § | |
| Appellant, | § | |
| VS. | § | CIVIL ACTION NO. C-11-259 |
| | § | |
| HUMBOLDT REDWOOD COMPANY, *et* | § | |
| *al*, | § | |
| | § | |
| Appellees. | § | |

## OPINION AND ORDER
## AFFIRMING BANKRUPTCY COURT

This case comes to the Court on appeal from the United States Bankruptcy Court, Hon. Richard S. Schmidt, presiding. At issue is the treatment of one asset in the valuation of the secured and administrative claims of Appellant, The Bank of New York Mellon Trust Company, N.A. acting as the Indenture Trustee for holders of certain notes owed by Debtor, Scotia Pacific Company, LLC (Scopac). Pursuant to a previous direct appeal to the United States Court of Appeals for the Fifth Federal Circuit[1] of the order confirming the plan of reorganization, the Fifth Circuit remanded to the Bankruptcy Court the question of "the value of [the] administrative priority claim and the extent to which relief is available."

The Fifth Circuit expressed concern that an unpaid account of $11.1 million owed to Scopac by another affiliated debtor was not properly added into the collateral valuations used to determine the amount of the Indenture Trustee's claim(s). This calculation must

---

[1] In the Matter of The Pacific Lumber Co., 584 F.3d 229 (5th Cir. 2009).

be done for purposes of determining whether the Indenture Trustee was receiving the "indubitable equivalent" of its collateral in plan payments as required by 11 U.S.C. § 1129(b)(2)(A)(iii) and no less than the pre-petition value of its collateral as required by 11 U.S.C. §§ 363 and 507.

On remand, the Bankruptcy Court held that the $11.1 figure was properly considered in the mathematical calculation and that the original valuation of the collateral, and the consequent determination of the Indenture Trustee's claim(s), stands. Final Order Resolving Remand, Record Excerpts Tab G. This Court has determined that the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument. Thus, the requests for oral argument are DENIED and the oral argument hearing date is VACATED. Bankr. R. 8012. This Court AFFIRMS the decision of the Bankruptcy Court.

### *Jurisdiction and Standard of Review*

Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 157(b)(2)(K)&(L) and 158(a)(1) in that it is an appeal from a Bankruptcy Court order involving the determination of the validity, extent, or priority of liens and the confirmation of plans of reorganization. The standard of review regarding the Bankruptcy Court's findings of fact is "clear error." Bankr. R. 8013; *Highland Capital Mgmt. LP v. Chesapeake Energy Corp.*, 522 F.3d 575, 583 (5th Cir. 2008); *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000). The standard of review regarding questions of law or mixed questions of fact and law is "de novo." *Highland Capital, supra; Century Indem., supra.*

### Factual Background

This case involves six related debtors involved in the logging business. They own approximately 220,000 acres of redwood forest (Timberlands), various timber milling operations, a power plant, and the entire town of Scotia, California. For purposes of this appeal, Scopac owned assets described as "Timberland,"[2] meaning the realty and "non-Timberland," meaning cash, accounts receivable, inventory, and investments. Scopac pledged these assets to certain creditors in exchange for loans. With the debtor companies emerging from bankruptcy through a confirmed plan of reorganization, the dispute before the Court is whether one set of creditors represented by the Indenture Trustee has been awarded its claim based on the appropriate valuation of its collateral.

### Discussion

**A. Contextual Overview**

When a debtor files a petition for relief under Chapter 11 of the United States Bankruptcy Code, certain provisions of the Bankruptcy Code override the contract rights of creditors. One such provision is 11 U.S.C. § 362, which automatically stays any creditor's attempt to collect on its debt or foreclose on its collateral. Another such provision is 11 U.S.C. § 552(a), which eliminates any creditor's claim to a lien on property that the debtor acquires post-petition. The intent is to "freeze" the positions of the parties as of the date the petition is filed and allow the debtor a fresh start or an opportunity at reorganization.

---

[2] The value of the Timberland collateral was held to be $510 million both as of the date of the petition and at the date of confirmation. That finding is not disputed in this appeal. Thus only the value of the non-Timberland collateral is at issue.

In a bankruptcy reorganization, matters are complicated because the debtor often needs to use its petition-date assets (some of which are subject to one or more pre-petition liens) to conduct ongoing business essential to the reorganization and, theoretically, to the creditors' ultimate benefit.  In order to justify that use of a creditor's collateral, the Bankruptcy Code provides for "adequate protection" to preserve the value of the creditor's claim or to compensate for the use of the collateral.  11 U.S.C. § 363.  In this case, the Bankruptcy Court allowed the debtor to engage in business with the non-Timberland assets on which the Indenture Trustee and Bank of America had liens.[3]

As compensation to the Indenture Trustee, the Bankruptcy Court ordered the debtor to make "adequate protection" cash payments for the Indenture Trustee's professionals' fees.  Additionally, pursuant to 11 U.S.C. § 364(d), the Indenture Trustee was entitled to a replacement lien (basically overriding 11 U.S.C. § 552) on assets acquired post-petition of the same class or category of the pre-petition collateral assets.  Last, the Bankruptcy Court granted the Indenture Trustee an administrative superpriority claim, as authorized by 11 U.S.C. § 507, for any loss or diminution in the petition-date value of encumbered assets caused by the debtor's use during the bankruptcy case.

To adapt the parties' fruit analogy, the concept was this:  At the time the debtor filed the petition, it had 10 apples subject to the creditor's lien.  The court allowed the debtor to trade those apples during the course of post-petition business and the debtor did, in fact, trade 4 of the apples for 4 oranges.  The court valued the collateral as of the

---

[3]   Scopac's Third Final Order (Agreed) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code [Dkt. No. 2485], Appellant's Record Excerpts, Tab I.

reorganization plan's confirmation date and found that the value of 6 apples plus 4 oranges was not as high as the starting value of 10 apples.  So it made sure that the debtor paid the creditor the higher value of the 10 apples anyway.  This compensates the creditor for its entire petition-date claim and takes into consideration the administrative priority claim.

The creditor then complains because it wants the value of 10 apples plus 4 oranges. The creditor is not entitled to that amount because valuing the collateral at the time of confirmation simply does not include the value of the 4 apples that had been traded away and are no longer in the court's control or available to satisfy any secured debt.[4]  The creditor's bankruptcy claim to the collateral existing at the time of confirmation is commensurate with standard business practices in which a creditor cannot foreclose on collateral that was disposed of in the usual course of business and is no longer in the debtor's possession.

In this case, in determining the amount of the Indenture Trustee's collateral value, the Indenture Trustee contends that the Bankruptcy Court failed to give it credit for the post-petition $11.1 million unpaid co-debtor account, generated by the sale of pre-petition assets.  The Indenture Trustee is correct that it had a lien on this account.  Record

---

[4]  In its Reply Brief, the Indenture Trustee brings into the analogy the value of the apple trees and all of their apples (harvested and unharvested) and suggests that, as interpreted by the Bankruptcy Court, it only receives the proper value of harvested apples if a tree is destroyed.  This argument, while more confusing than clarifying, still fails to acknowledge that the value of the harvested apples is offset by the expense of labor, water and fertilizer, packaging, advertising, insurance, taxes, and maintenance of the entire orchard.  Because the creditor's lien extends to both harvested apples and cash on hand, if cash on hand is depleted in the harvesting or maintenance of the remaining collateral, the creditor is only entitled to the net of both categories of collateral at the time of confirmation.  The creditor is not entitled to disregard losses and only value gains.  Furthermore, it should not go without saying that the value of the trees (Timberland) was arrived at separately and is neither subject to dispute nor at issue in this appeal.

Excerpts, Tab I.  The Indenture Trustee is not correct that this post-petition gain can be viewed independent of the losses in the overall "snapshot" of the confirmation date value of all of the non-Timberland collateral.  Consequently, the Indenture Trustee's appeal must fail.

### B. The "Indubitable Equivalent" Valuation of the Secured Claim for Cramdown Confirmation

For purposes of confirming the bankruptcy reorganization plan over the Indenture Trustee's opposition (referred to as cramdown), the plan must provide for the payment in full of the Indenture Trustee's secured claim, *valued as of the date the plan is confirmed*. 11 U.S.C. § 1129(b).  The Bankruptcy Court looked to the evidence of the confirmation-date values of the Indenture Trustee's non-Timberland collateral and added the face value[5] of the debtor's cash ($5,047,057), accounts receivable ($11,176,805—*the questioned $11.1 million co-debtor account*), inventory ($526,367), investments ($26,763,175), and other non-Timberlands collateral ($702,093), and held that the actual value was no more than $44.1 million.   Clearly, the $11.1 million asset was properly included in the calculation.

The value of non-Timberland collateral was not exclusively available to pay the Indenture Trustee's claims.  Rather, Bank of America had a lien on the same assets with

---

[5]   The Bankruptcy Court acknowledged that the face value probably exceeded the current fair market value, meaning that any doubt in the valuations was resolved in favor of the Indenture Trustee.  An Adjustment Notice filed by the reorganization plan proponents showed that auction rate securities with a face value of $24 million were really only worth $8.7 million (resulting in a reduction of $15.3 million in confirmation-date value).  Additionally, timber notes with a face value of $2,763,175 were really worth only $1,934,223 (resulting in a reduction of $828,952 in confirmation-date value).  Given that the actual value of the non-Timberland collateral was approximately $16 million less than the face value, the $44.1 million valuation was ultimately subject to reduction to approximately $28 million.  Findings of Fact and Conclusions of Law on Limited Remand of the Order Confirming the MRC/Marathon Plan, Finding No. 9, n.3, p. 4, Record Excerpts, Tab F.

priority over the Indenture Trustee.  Using the $44.1 starting figure (which the record reflects was inflated in favor of the Indenture Trustee), the Bankruptcy Court then had to subtract the Bank of America lien, which at the time of confirmation was valued at $37.6 million, leaving $6.5 million available from the non-Timberland collateral for the Indenture Trustee's secured claim.  Finding of Fact No. 9, Record Excerpts, Tab F, p. 4.

The Bankruptcy Court could have set a specific value for the secured claim for purposes of 11 U.S.C. § 1129 and could then deal with the diminution in value from the petition-date value through the 11 U.S.C. § 507 administrative claim.  But that exercise was deemed unnecessary because (1) comparing the confirmation-date value to the petition-date value, it was clear that the petition-date value exceeded the confirmation-date value and would govern the plan requirements to the Indenture Trustee's benefit and (2) because the plan proponents would have to arrange for the payment of both the secured claim and the administrative claim (not to exceed the petition-date valuation), there was no benefit to distinguishing between them.  In other words, when the dust settled, using the petition-date values rather than the confirmation-date values compensated the Indenture Trustee for its secured claim and its administrative claim in one evaluation that maximized the Indenture Trustee's position.

The Bankruptcy Court's analysis ensured that the Indenture Trustee received the full value of its secured claim, valued as of the date of the petition.  While it is possible to say that the confirmation-date *secured claim* under 11 U.S.C. § 1129 might have been a lesser amount, the result would simply be that the *administrative claim* under 11 U.S.C. § 507(b) would then have to be higher in order to bring the Indenture Trustee's claim to its

petition-date value as guaranteed by the cash collateral order.  Likewise, a higher secured claim would mean a lower administrative claim.  That is because, under the terms of the plan of reorganization, the Indenture Trustee would have to be paid the petition-date value of its collateral as the higher value, regardless of the name given to the claim.

### C.    The Indenture Trustee's Claim for More

The Indenture Trustee contends that it is entitled to the gain of the $11.1 million post-petition co-debtor account, over which it had a pre-petition lien that, it claims, survived 11 U.S.C. § 552.  The Indenture Trustee, relying on 11 U.S.C. § 552(b), claims that the lien guaranteed payment on the "up side" by virtue of the contractual language and was not limited to securing only against the diminution of value from the petition-date collateral values.

Nothing about 11 U.S.C. § 552(b) provides the Indenture Trustee with greater rights than were actually conferred by the Bankruptcy Court for two reasons.  First, section 552(b) allows the continuation of a contractual lien on proceeds of existing (pre-petition) collateral "except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."  To the extent that the contractual rights differ, the Bankruptcy Court has, with the express agreement of the Indenture Trustee, "ordered otherwise."  Agreed Cash Collateral Order, Record Excerpts, Tab I.

The Indenture Trustee argues that the hearing and finding of equities did not occur and thus this phrase of § 552(b) does not apply.  However, no hearing or findings were required where the parties, including the Indenture Trustee, agreed to the cash collateral order, which had the effect of limiting any post-petition claims.  Nothing about the cash

collateral order allowed for the Indenture Trustee to claim its lien on post-petition assets to increase its secured claim over and above the petition-date value.  The cash collateral order grants the Indenture Trustee a *replacement* lien "to the extent of the postpetition *diminution* of its interests in the Prepetition Collateral and the Cash Collateral."  Order, Record Excerpts, Tab I, para. 30, pp. 9-10 (emphasis added).

Second, the Indenture Trustee's contractual lien only extends to the property in the debtor's possession, as discussed above.  Even if the debtor's estate gained an $11.1 million account, it obviously lost other items of collateral such that the overall picture shows a decline in total collateral value from the petition date.  Semantics or hyper-focussing on either the petition-date valuations or the $11.1 million co-debtor account cannot eliminate the fact that the $11.1 million account was part of a total package and it is the overall value of the total package that governs the creditors' secured or superpriority administrative claims at the time of confirmation.

In sum, the confirmation-date snapshot of the debtor's assets governs the secured claim and the cash collateral order governs the administrative superpriority claim. Nothing about the use of the values of collateral as of the petition date for "diminution of value of administrative claim" purposes requires the addition of the $11.1 million account (1) without the subtraction of non-Timberland assets that were depleted in the course of business (which would render the confirmation date values) or (2) allows the Indenture Trustee to profit by increasing the secured value of its claim over and above that established in the petition-date values.

Thus, there is no clear error in the Bankruptcy Court's calculation of the Indenture Trustee's administrative claim, which calculation gave due consideration to the $11.1 million co-debtor unpaid account, along with the other non-Timberland collateral. The Bankruptcy Court properly applied the law and awarded an appropriate amount to the Indenture Trustee. The Indenture Trustee's Issues 1, 2, 3, 4, 5, and 6 are overruled and the Bankruptcy Court's Order of July 19, 2011 is **AFFIRMED**.

ORDERED this 9th day of January, 2012.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE